SOHIER (CLARK v.). See Case No. 2,835.

## Case No. 13,158.

### SOHIER v. MERRIL.

[3 Woodb. & M. 179.] [1]

Circuit Court, D. Maine. May, 1847.

INSOLVENCY — COLLUSIVE JUDGMENT — DEFAULT— ATTACHMENT—PARTNERS—INJUNCTION.

1. When a temporary injunction is asked after filing of the bill, and before an answer and hearing as to a permanent injunction, it may be sufficient, in the first instance, to show that the judgment and execution objected to, were obtained by a default of the debtors, that they soon after went into bankruptcy, that the plaintiff was a relative, and the demand large, and of some years standing; but that when other evidence is put in, showing the original debt to be bona fide, that the delay of several years was to accommodate former partners and relatives, that the action was defaulted because there was no defence, that the plaintiff had promised as much favor as other creditors gave, and that the suit was brought in this court and the attachment properly made, as the plaintiff had long lived in a different state, and did so when the debt arose,—these circumstances removed suspicion and sustained the proceeding sought to be enjoined against.

2. One of the signers of the note sued on was a new partner, and had affixed his name within a year, and most of the real estate now stood in his name instead of that of one of the former partners, and he became sick and infirm, and his name was asked as security, and six months' more credit was given afterward: this was binding on him, so as not to justify the setting aside the default, or allowing an injunction on motion of the assignees of the debtor.

This was a bill in chancery asking an injunction against the respondent in the following case. It was filed September 8th, 1847, at an adjourned session of the May term. In March, 1847, an action had been instituted by John Merril in this court, as a citizen of the state of Maine, against Andrew Horn, Richard Horn, and Sinclair, citizens of Massachusetts, on a promissory note made by them to him, dated May 1st, 1841, for $16,000, in one year, with interest. It was returnable at the May term ensuing; was defaulted and judgment rendered June 19th, 1847, against Andrew Horn and Sinclair, the death of Richard being first suggested. Execution issued the same day and was within thirty days extended on certain property of the respondent, chiefly equities of redemption, which had been attached on the original writ. It was advertised for sale on the 16th inst. The bill alleges that the respondents were petitioned against as insolvents, on the 2d of August, 1847, and the complainant [William Sohier] appointed assignee, August 28th. That in behalf of the creditors, he seeks to avoid the note and judgment upon it, because believed to be collusive and without due consideration; and asks a temporary injunction till further pleadings, answer and process can be had.

In order to justify the preliminary injunction now requested, the complainant offered copies of the records referred to, and proved

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

the facts that this firm had been accustomed to defend other suits, but had allowed this one to be defaulted; that Merril was father-in-law of Richard Horn, and that the respondents became embarrassed last January, and proceedings in insolvency had been instituted against them, April 6th, 1847, and a warrant issued which had never been delivered to a messenger or returned. The plaintiff also put Sinclair on the stand, as a witness, and put in the deposition or examination of Andrew Horn before the master, to show the origin of the debt, and the note and certain property conveyed to Merril. But this evidence unexpectedly proved that Merril, as early as 1836, became a silent partner in a firm composed of Richard Horn, his son-in-law, and Sinclair, for dealing in lumber and real estate; that he loaned to them the capital of $6,000 to $8,000, and was to have one-half the profits; that in the spring of 1841, Merril wished to withdraw; that on an inventory and examination of their concerns it was estimated that they (Richard and Sinclair) were worth $40,000, including the firm property; and repaying to Merril half the profits in that and his principal, would give to him about $16,000 and leave them worth $24,000 as security for his final payment. That Merril was wealthy, and waited for his money till about the summer of 1846, when he became uneasy and requested that Andrew Horn, who, in the meantime, had become a member of the firm, should sign the note. One ground urged for this was, that most of the new debts for real estate had been taken in his name instead of Richard's, who was sick and not expected long to survive; and that Richard having conveyed most of the old estate, Merril would not be so secure as he was at first, without Andrew's name. Accordingly, in September, 1846, Andrew signed the note, and no further steps were taken to collect it till the suit in March, 1847. After the firm became embarrassed, in January, 1847, Merril agreed to compromise on the same terms which all the other creditors would accede to, but after an attempt to get them all to unite in a settlement, it failed. Sinclair testified that the action on this note was not defended, as no valid objection existed against it, and because Merril had agreed to a compromise if the rest of the creditors would; but though provision had been offered to pay several of them in full, including Merril, all did not agree. Sinclair swore further, that everything had been endorsed on the note by Merril, which had ever been paid to him in any shape.

Mr. Sohier, pro se.
Mr. Simmons, for Merril.

WOODBURY, Circuit Justice. The complainant in this case had sufficient grounds, prima facie, as assignee of the creditors, to suspect from the large amount of this note,

and the relationship between the parties, and the great length of time it had run, as well as its being defaulted, that it was not entirely for a valid consideration. He has done right, therefore, to have the real facts ascertained. But as developed by his own witnesses, they remove the suspicions, explain all which was questionable, and furnish no apology for the interference of this court in the legal proceedings by any extraordinary measure of an injunction. If regarded in another light, such as a motion to set aside the default and the subsequent proceedings, made at another session of the same term on the ground of a good defence to the note or cause of action, the case is not clearly made out. The consideration of the note was valid and ample. All payments on it have been allowed. There is no defence of the statute of limitations against it. Nor is there the least fraud or collusion proved which would enable the assignee to defend where the debtor might not. See cases in Leland v. The Medora [Case No. 8,237]. If Andrew Horn could in strict law defend, because he signed after the original making of the note, it would not avail in favor of the other signers. But, in my view, he has in strict law no good defence, much less in equity, and much less in such a way as to justify us in setting aside the default to let in a defence of so harsh and unjust a character. Such a subsequent signer may well be regarded as a principal, and as adopting both the original promise and original consideration. See cases in Phillips v. Preston, in 5 How. [46 U. S.] 278. He, in truth, received the benefit of much of the very property left with the firm, for which this note was given. When he afterwards became a member, and Richard conveyed it, the title to other property received in exchange or bought with its proceeds was taken in his name instead of Richard's. Again, he not only in this way obtained property, but Richard's name ceased to become good security by this means, and Andrew's was properly substituted or added to it in consequence of his holding much of the estate which had before been in Richard's name. This course was not only just, to Merril, but it doubtless led him to give further indulgence to all on the note. He, in fact, waited nearly six months longer, and thus the consideration in either view seemed sufficient to make Andrew responsible for what he promised, deliberately, in writing, and over his own signature. But, in the other view, as a case where the plaintiff, Merril, in a suit at law is prosecuting an action unjustifiably, or getting an improper advantage in this court, the application for an injunction does not seem, after all the evidence has been put in and weighed, as at all sustained by any sufficient ground. There is no combination to uphold the attachment against the insolvent law by a collusive action in this court, when it should not be here. Merril lives in Maine, and did in 1841, when the

note was given, and long before. Towne v. Smith [Case No. 14,115]; Perry Manuf'g Co. v. Brown [Id. 11,015]. Merril obtained his lien, then, by his attachment first. It was not only first, but a fair and legal lien. Merril seems, also, in law and equity entitled to recover all the note, deducting the endorsements. The partnership was on fair terms, the settlement fair, the execution of the note fair, the suit conducted in a fair manner. In this state of things it would not do to issue an injunction, because something may be obtained from Merril's answer to the bill which would injure his case. No such presumption exists, since the whole has been explained satisfactorily by the other parties, under oath. Without evidence, then, of wrong or fraud, and indeed, against evidence to the contrary, I do not feel justified in interfering with an actual judgment.

Motion for a temporary injunction refused.